UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIRILL SYCHEV,<br><br>    Plaintiff,<br><br>    v.<br><br>UR M. JADDOU, *et al.*,<br><br>    Defendants. | Civil Action No. 20-3484 (CKK) |

**MEMORANDUM OPINION**
(March 30, 2022)

In this action, Plaintiff Kirill Sychev ("Plaintiff" or "Sychev") seeks injunctive and mandamus relief ordering officials of the United States Department of State ("State Department") and the United States Department of Homeland Security ("DHS") to more expeditiously act on his Form I-526 petition for an EB-5 immigrant investor visa pursuant to the Administrative Procedure Act's ("APA") bar on "unreasonabl[e] delay[]." 5 U.S.C. § 706(1). Because DHS has already conveyed Plaintiff's visa application for processing to the State Department's National Visa Center ("NVC"), the Court shall dismiss as moot the complaint as against the DHS Defendants. As for the State Department Defendants, the Court shall order additional briefing from the parties before ruling. Accordingly, and upon review of the pleadings,[1] the relevant legal authority, and the record as a whole, the Court shall **GRANT IN PART AND HOLD IN ABEYANCE IN PART** Defendants' [15] Motion to Dismiss.

---

[1] The Court's consideration has focused on the following:
- Plaintiff's Complaint, ECF No. 1 ("Compl.");
- Defendants' Motion to Dismiss and Memorandum in Support Thereof, ECF No. 15 ("Mot.");
- Plaintiff's Memorandum of Law in Opposition to Defendants' Motion Motino to Dismiss, ECF No. 16 ("Opp."); and

## I. BACKGROUND

### A. The EB-5 Immigrant Investor Program

The Immigration and Nationality Act ("INA"), U.S.C. §§ 1101 *et seq.*, authorizes the issuance of "EB-5" visas to immigrants who have "invested" capital in a "new commercial enterprise" that "will benefit the United States economy and create full-time employment" for ten citizens or non-citizens with work authorization. 8 U.S.C. § 1153(b)(5)(A)(i)-(ii). Through this process, the applicant must have also made a direct investment of at least $1,000,000 or an investment of $500,000 into a "targeted employment area." § 1153(b)(5)(C)(ii).[2] A "targeted employment area" is a "rural area or an area which has experienced high unemployment." § 1153(b)(5)(B)(ii); *see also* 8 C.F.R. § 204.6(e).

At the time of the complaint, the law offered EB-5 applicants a second route through investing into a "regional economic center." *See* Departments of Commerce, Justice, and State, the Judiciary and Related Agencies Appropriations Act of 1993, Pub. L. No. 102-395, § 610(a), 106 Stat. 1828, 1874 (Oct. 6, 1992); 8 C.F.R. § 204.6(m). These regional centers combine the funds of many investors and channel them to enterprises that "increase[] export sales, improve[] regional productivity, job creation, or increase[] domestic capital investment." 8 C.F.R. § 204.6(m)(3)(i). A foreign investor's investment in an approved Regional Center satisfies the

---

- Defendants' Reply in Support of Defendants' Motion to Dismiss, ECF No. 17 ("Repl.").

In an exercise of its discretion, the Court has concluded that oral argument would not assist in the resolution of the pending Motion.

[2] Effective November 21, 2019, the threshold amounts required for EB-5 investments were increased from $1,000,000 to $1,800,000 generally and from $500,000 to $900,000 for targeted employment areas. *See* Final Rule, *EB-5 Immigrant Investor Program Modernization*, 84 Fed. Reg. 35,750, 35,808 (Jul. 24, 2019). The Government notes that "[b]ecause Plaintiffs filed their petitions before the requisite amounts were changed, they may still qualify under the old amounts." *See* Def.'s Mem. at 2 n.3.

EB-5 "employment-creation" requirement by creating jobs indirectly. *Id.* §§ 204.6(j)(4)(iii), 204.6(m)(7)(ii).

To receive an EB-5 visa, an applicant must first file with USCIS a petition for classification as an EB-5 investor, using a "Form I-526." *See* 8 C.F.R. § 204.6(a), (c). Once the Form I-526 is approved by USCIS, the applicant must still wait for a visa to become available, which, the D.C. Circuit has observed, "may take years," *Mirror Lake Village, LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020); *see also Nohria v. Renaud*, No. 20-cv-2086-BAH, 2021 WL 950511, at *2 (D.D.C. Mar. 14, 2021) ("Successful adjudication and approval of an I-526 petition makes a petitioner *eligible* for a visa, but does not automatically provide a visa."(emphasis added)).

Because the INA limits the total number of visas available each fiscal year and allots percentages of visas by country and type of visa, [3] when the demand for visas is higher than the supply, visa petitions are queued based on their "priority date"—typically the date the visa petition was filed with USCIS. 8 U.S.C. § 1153(e); 8 C.F.R. § 204.6(d). A petitioner then becomes eligible for a visa when the "priority date" is listed for the applicant's country and visa category in the State Department's monthly Visa Bulletin. *See Haider v. U.S. Deo't of Homland Sec.*, No. 20-3808 (CKK), 2021 WL 5630794, at *2 (D.D.C. Dec. 1, 2021). Finally, a State Department consular officer conducts an interview with the applicant and ultimately approves or denies the visa. *Id.*

---

[3] At the time of the complaint, the INA limited the total number of immigrant visas per year, the total number of employment-based visas granted to individuals from a given country, and also limits EB-5 visas to 7.1% of all employment-based visas granted. 8 U.S.C. § 1151 (a)(2), (b)(5)(A), (d).

3

Since its inception, the Program had been repeatedly reauthorized by statute. *U.S. Immigration Fund-NY LLC v. Mayorkas*, No. 21-0358 (CKK), 2022 WL 715239, at *2 (D.D.C. Mar. 10, 2022). The Program, however, expired on July 21, 2022, and, for its part, DHS ceased review of Form I-526 petitions. *See id.* at *3. On March 15, 2022, President Joseph R. Biden, Jr. signed the Violence Against Women Act Reauthorization Act into law, reauthorizing the Program and EB-5 visa applications tied to the program. *See* Violence Against Women Act Reauthorization Act of 2022, Pub. L. 117-103, 136 Stat. 49, 1075 (2022). In particular, the law forbids the denial of a Form I-526 petition on the basis of the prior lapse in the Program's statutory authorization. *Id.* at 1109.

### B. Factual Background

Plaintiff, a citizen of the Russian Federation, submitted an I-526 petition for an EB-5 visa to DHS on March 24, 2016. Compl., Ex. A at 2. DHS approved the petition on November 16, 2018 and referred it to NVC for further processing. Compl. ¶ 9; *see also id.* On May 7, 2019, Plaintiff appeared for his interview with a consular officer at the United States Embassy, Moscow ("Embassy"). Compl. ¶ 10. On June 17, 2019, the Embassy sent Plaintiff a letter informing him that his application had been sent back to USCIS for reprocessing on account of "indications that petition [sic] . . . contains inaccurate information." Compl. Ex. B. Defendant asserts, and Plaintiff does not contest, that USCIS found no issue with his I-526 petition, reaffirming and conveying it to NVC on March 26, 2021. Opp. at 2. On April 23, 2021, however, the Embassy moved all visa processing for Russian nationals to the United States Embassy, Warsaw. State Department, Visas, *available at* https://ru.usembassy.gov/visas/ (last visited March 23, 2022 10:35 AM). Accordingly, should a consular officer assigned to Plaintiff's visa application schedule an interview, Plaintiff would have to travel to Poland for the

4

interview.  Due to the Russian Federation's ongoing invasion of Ukraine, Polish airspace remains closed to Russian commercial flights and other methods of travel from Russia into Western Europe remain clogged.  *See* Antonia Mortensen and Ivana Kottasava, "Poland and the Czech Republic will close airspace for Russian airlines," *CNN* (Feb. 25, 2022 1:47 PM ET) https://edition.cnn.com/europe/live-news/ukraine-russia-news-02-25-22/h_688ae817addb5fe6847b975d717fe824; Lisa Abend, "There's an Atmosphere of Fear. With Flights Banned, Russians are Fleeing by Train to Europe," *Time* (Mar. 16, 2022 8:51 AM ET) https://time.com/6157438/russians-trains-europe-ukraine/.[4]

## II.     LEGAL STANDARD

### A. Motion to Dismiss for Lack of Jurisdiction

On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian*, 442 F. Supp. 3d at 91–92 (D.D.C. 2020); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  In determining whether there is jurisdiction, the court may "'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"  *Coal. For Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).  Courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the

---

[4] Travel restrictions for Russian nationals are widely reported, and the Court may "'take judicial notice of matters of common knowledge.'" *Smith v. Ergo Solutions, LLC*, 306 F.R.D. 57, 65 (D.D.C. 2015) (JDB) (quoting *Ohio Bell Tel. Co. v. Pub. Utils. Comm'n of Ohio*, 301 U.S. 292, 301 (1937)).  To be clear, the Court takes judicial notice of these circumstances not as a matter of fact finding, but rather to assess whether the complaint states a claim for which the Court may grant relief.

facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005); *Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007).

However, "the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001). A court need not accept as true "'a legal conclusion couched as a factual allegation'" or an inference "'unsupported by the facts set out in the complaint.'" *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)).  The court may also consider documents in the public record of which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III.   DISCUSSION

#### A.  Mootness

Defendants first move to dismiss the complaint as against the DHS Defendants on mootness grounds.  Mot. at 5.  Defendants argue that because Plaintiff's visa application is currently with NVC for review, there is no relief the Court could grant against DHS.  As a practical matter, Plaintiff conceded the point by failing to respond to it in his opposition.  *Kone v. District of Columbia*, 808 F. Supp. 2d 80, 83 (D.D.C. 2011).  Even if he had not, where an agency has accorded all relief it can in a visa case, claims against that agency are moot.  *Haider*, 2021 WL 5630794, at *2.  Accordingly, the Court shall dismiss Plaintiff's complaint as against Ur M. Jaddou, in her official capacity as Director, U.S. Citizenship and Immigration Services, and Alissa Emmel, in her official capacity as Chief, Immigrant Investor Program Office.

#### B.  Failure to State a Claim

The APA requires that agencies "within a reasonable time . . . shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).  If agencies fail to do so, courts may "compel agency

action unlawfully withheld or unreasonably delayed." *Id.* § 706(1)  "There is 'no per se rule as to how long is too long' to wait for agency action, but a reasonable time for agency action is typically counted in weeks or months, not years." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (citation omitted) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)).  The standard by which the Court reviews agency inaction under the Mandamus Act, 28 U.S.C. § 1361, is the same standard applied to claims under § 706(1) of the APA.  *Jingjing v. Mayorkas*, No. 20-cv-654 (CRC), 2021 WL 2115209, at *3 (D.D.C. May 25, 2021).

To determine whether Plaintiffs have sufficiently alleged that agency action has been "unreasonably delayed," the Court applies the factors laid out in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted).  Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond

which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003).  Moreover, the D.C. Circuit has noted the "importance of competing priorities in assessing the reasonableness of an administrative delay." *Id.* (internal citations and quotation marks omitted).  It therefore has refused to grant relief where "a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).

    1.  First and Second *TRAC* Factors

  The D.C. Circuit has explained that the first *TRAC* factor—the time agencies take to make decisions must be governed by a "rule of reason"— is the "most important," although it is generally reviewed with the second *TRAC* factor as well. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).  The inquiry centers on "whether the agency's response time . . . is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

  In general, courts of this jurisdiction have regularly found that the Government applies a "rule of reason" to review of I-526 petitions by EB-5 applicants—USCIS, for example, adjudicates applications in the order they were filed. *See, e.g.*, *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 50 (D.D.C. 2021) (TNM).  In most visa cases seeking to expedite review, therefore, the question is whether that general rule of review has resulted in an unreasonable delay. *E.g.*, *Xiaobing v. Blinken*, 544 F. Supp. 3d 1, 11-12 (D.D.C. 2021) (TJK) (holding that effects of COVID-19 made delay in visa adjudication reasonable).  In those cases, delays of even three years may be reasonable. *See, e.g.*, *Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020); *Skalka*

9

*v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) (RJL) (two-year delay "does not typically require judicial intervention").

Plaintiff's claim is slightly different. Unlike visa cases where the applicable agency has yet to act, the State Department *has* acted, and acted in such a way as to delay the ultimate adjudication of Plaintiff's visa application. Plaintiff, therefore, alleges arbitrary delay not on the basis of the lack of or improper agency policy, but on the basis of that policy having not been applied to his application. The question, therefore, turns on the propriety, i.e., reasonableness, of the alleged mistake on the part of the consular officer who sent Plaintiff's visa application back to USCIS for further processing. In support of this argument, Plaintiff cites *Wang v. Chertoff*, 676 F. Supp. 2d 1086 (D. Idaho 2009). That case sensibly holds that dismissal of an unreasonable-delay claim was improper where bureaucratic error on USCIS' part caused excessive administrative delay. *Id.* at 1098-99.

The allegedly improper agency action at issue here, however, was not made by USCIS, but rather by a State Department consular officer. This fact implicates the "doctrine of consular nonreviewability," which the parties have not addressed. "The doctrine of consular nonreviewability recognizes that Congress has empowered consular officers with the exclusive authority to review a proper application for a visa when made overseas." *Thatikonda v. U.S. Dep't of Homeland Sec.*, 2022 WL 425013, at *5 (D.D.C. Feb. 11, 2022) (citing 8 U.S.C. §§ 1104(a); 1201(a), (g)). Accordingly, in practice, "decision[s] to issue or withhold a visa [are] not subject to judicial review, at least unless Congress says otherwise." *Joorabi v. Pompeo*, 464 F. Supp. 93, 100 (D.D.C. 2020) (quoting *Saavedra Bruno*, 197 F.3d at 1159).

Again, the decision here is not quite a decision to "issue or withhold," *definitively*, but to send Plaintiff's application back to USCIS for further processing. Courts of this jurisdiction

have held that the doctrine does not apply where "plaintiffs 'do not seek judicial review of a consular decision, but instead seek a final decision on their applications.'"  *Didban v. Pompeo*, 435 F. Supp. 3d 168, 174 (D.D.C. 2020) quoting *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Pompeo*, No. 18-CV-01388-TSC, 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019)).  Upon the Court's review, however, no court has yet to consider whether the doctrine applies to a consular officer's referral of an application to USCIS for re-review.

Because this first *TRAC* factor may well be dispositive in this case, and because the parties have yet to address the doctrine of consular nonreviewability, the Court will order supplemental briefing on the question and hold the rest of the Motion in abeyance.  Nevertheless, in an effort to guide that briefing, the Court shall offer a tentative discussion of the rest of the TRAC factors, subject to ultimate resolution after reviewing the parties' supplemental briefing.

### 2.  Fourth TRAC Factor

The fourth *TRAC* factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80. In other words, the Court considers whether expediting Plaintiff's application would "harm other agency activities of equal or greater priority."  *Nibber*, 2020 WL 7360215, at *7. The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay"—even "refus[ing] to grant relief when all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain." *Mashpee*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d at 75); *see also Ghadami*, 2020 WL 1308376, at *9 (finding that "expediting review in [the plaintiff's] case would merely direct

government resources from the adjudication of other waiver applications"). Any such order interferes with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76.

Again, this case presents somewhat different circumstances. As this Court explained in *Desai v. USCIS*, No. 20-1005 (CKK), 2021 WL 1110737 (D.D.C. Mar. 22, 2021), the fourth *TRAC* factor weighs in favor of the defendants where an order directing the agency "to process Plaintiff's application would still put him ahead in the queue of those *similarly situated*." *Id.* at *7 (emphasis original); *see also Palakuru*, 521 F. Supp. 3d at 53 ("Granting [Plaintiff] relief here would advance his petition in front of others similarly situated—with respect to the availability of visas and investment in a regional center—who filed their petitions earlier."). Here, the universe of "similarly situated" applicants is substantially smaller. Plaintiff's class, properly understood, is that of Russian visa applicants whose petitions have been returned to USCIS after a consular interview. The Court is cognizant of Plaintiff's uncertain ability to travel to Warsaw for a consular interview—whenever one may be scheduled—while travel beyond Russia is severely restricted. Nevertheless, the circumstances surrounding the Russo-Ukrainian War and the ongoing COVID-19 pandemic require the Court to give "deference to the State Department's priority-setting and prioritization of 'mission critical' functions." *See Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021) (Howell, C.J.). This factor therefore weighs slightly in favor of the Government.

   3.  Third and Fifth *TRAC* Factors

The third and fifth factors are often considered together, and require the Court to consider Plaintiffs' interests, health, and welfare. *Ghadami*, 2020 WL 1308376, at *9. In general,

concerns like separation from family or inability to supervise an economic investment are insufficient to weigh in favor of the plaintiff. *See, e.g.*, *Desai*, 2021 WL 110737 at *7 (economic interests); *Thakker v. Renaud*, No. 20-1133 (CKK), 2021 WL 1092269, at *7-8 (D.D.C. Mar. 21, 2021) (family separation).  In his Supplemental Memorandum, Plaintiff paints a more compelling picture, alleging that, by virtue of seeking an EB-5 visa while Russia's invasion of Ukraine is ongoing, "he now finds himself in grave danger as a 'foreign agent' who has invested money and sought to acquire permanent resident status in a country that has [been characterized by the Russian government as] [] 'firmly ensconced as Russia's top enemy.'"  Supp. Br. at 2.  Such an allegation, however, is broad and fairly unsubstantiated at present time, not to mention absent from the operative complaint.  Therefore, the Court concludes that, based on the information in the pleadings and that which the Court may judicially notice, Plaintiff falls short of meeting the third and fifth *TRAC* factors of showing that human health and welfare are at stake or that there are other interests prejudiced by the agency's delay. *See Nohria*, 2021 WL 950511, at *6 n.5.

    4.  Sixth *TRAC* Factor

The sixth *TRAC* factor notes that the "Court need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9.  Plaintiff admits that he "does not possess sufficient information to allege bad faith," Opp. at 6, and so this factor is not an issue in this case.

As explained above, the Court's discussion of the *TRAC* factors is, at present, tentative, and the Court awaits further briefing from the parties.

## IV.     CONCLUSION

For the foregoing reasons, the Court shall **GRANT IN PART AND HOLIDNG IN ABEYANCE IN PART** Defendants' [15] Motion to Dismiss and **DISMISS** Plaintiff's [1] Complaint as against Defendants Ur M. Jaddou, in her official capacity as Director, U.S. Citizenship and Immigration Services, and Alissa Emmel, in her official capacity as Chief, Immigrant Investor Program Office.  An appropriate order accompanies this Memorandum Opinion.

Dated: March 30, 2022                                /S/
                                                                         COLLEEN KOLLAR-KOTELLY
                                                                         United States District Judge